Richard E. Condit (pro hac vice application forthcoming)
Ellen Eardley (pro hac vice application forthcoming)
Cleveland Lawrence III (pro hac vice application forthcoming)
Jane Kim (SBN 333342)
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel: 202.822.5100
Fax: 202.822.4997
rcondit@findjustice.com
eeardley@findjustice.com
clawrence@findjustice.com
jkim@findjustice.com

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY JANE LEUNG, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF** |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | <u>**JURY TRIAL DEMANDED**</u> |
| SILICON VALLEY BANK, | |
| SVB INVESTMENT SERVICES, INC., | |
| SVB WEALTH, LLC, | |
| FIRST-CITIZENS BANK & TRUST CO., | |
| GREG BECKER, | |
| JOHN LONGLEY, | |
| Defendants. | |

# INTRODUCTION

(1) Before the collapse of Silicon Valley Bank ("SVB"), Plaintiff Shirley Jane Leung ("Leung") was employed in several executive positions within SVB Private Bank ("SVB Private"), which was SVB's private banking, wealth management, and trust arm. Leung has over 25 years of investment management and business-building experience in both public and private markets, combined with a deep knowledge of portfolio management, investments, asset and risk management, products and solutions, and wealth management.

(2) From the summer of 2022 through February 2023, Leung repeatedly alerted SVB's senior executives to SVB's systemic failures to manage client portfolios and to potential fraud in an ongoing audit, as well as other issues. By speaking up, she sought to protect SVB's integrity and make sure that SVB upheld its fiduciary duties to its customers. SVB's senior executives, however, did not act to meaningfully address her concerns. Leung's efforts to bring fraud and fiduciary violations to their attention are actions protected by Federal and State laws. On February 16, 2023, without prior notice or warning, Leung was laid off. Leung's layoff was in retaliation for her protected activities. Leung was advised that her last day of work would be March 17, 2023.

(3) On March 10, 2023, SVB failed and was closed by the California Department of Financial Protection and Innovation.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

(4) This Court has subject matter jurisdiction under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(6). Leung has exhausted her administrative remedies before the Federal Deposit Insurance Corporation (FDIC).

(5) This Court has supplemental jurisdiction over Leung's claims under California law pursuant to 28 U.S.C. § 1367, because the claims are so related to the FIRREA claims that they form part of the same case or controversy.

(6) This Court also has jurisdiction under the Sarbanes-Oxley Act, 18 U.S.C. §1514A(b)(1)(B) (SOX). Leung has filed a complaint with the U.S. Department of Labor, but that agency will be unable to render a final decision within 180 days. Leung's administrative remedies under SOX are exhausted.

(7) Venue is proper in this district under 28 U.S.C. §1391(b)(1) & (2).

(8) Divisional assignment to the San Jose Division is proper under Civil L.R. 3-2(c), because the SVB Defendants' principal place of business is in Santa Clara and because a substantial part of the events or omissions giving rise to the claims occurred there.

**PARTIES**

(9) **Plaintiff Shirley Jane Leung** is a seasoned executive manager in the financial industry, having held prominent positions at Barclays Global Investors and BlackRock before joining SVB in 2020. She is a licensed Certified Financial Planner ("CFP"), and a Chartered Financial Analyst ("CFA"). Ms. Leung also holds several Financial Industry Regulatory Authority ("FINRA") Series 7, 24, 63, 79 licenses. She is a resident of California and worked for SVB in California at all times relevant to this Complaint. Leung worked in the SVB division known as SVB Private and also had oversight over SVB Investment Services, the broker-dealer platform.

(10) **Defendant Federal Deposit Insurance Corporation** (FDIC) is an independent agency created by Congress to maintain stability in the nation's financial system. FDIC is the receiver for SVB and Silicon Valley Bridge Bank (SVBB), and in this role is SVB's successor.

(11) **Defendant Silicon Valley Bank** (SVB) was, before its failure in March 2023, a commercial depository bank headquartered in Santa Clara, California and was the principal and a wholly-owned subsidiary of SVB Financial Group, a publicly traded company. SVB Private, a division of SVB, was the marketing brand name for the private banking, lending, brokerage, and wealth management and investment advisory and trust services that SVB offered. SVB Private controlled SVB Investment Services, Inc. and SVB Wealth, LLC. In March 2023, SVB failed and was eventually purchased by First-Citizens Bank & Trust Company ("FCB"). SVB Private then became a division of FCB, and FCB operates SVB Private under the same SVB Private name and with the same business model, services, customers, employees, and SVB logo. SVB Investment Services, Inc. is also now a wholly owned, non-bank subsidiary of First-Citizens Bank & Trust Company ("FCB").

(12) **Defendant SVB Investment Services, Inc.** was a division of Silicon Valley Bank. SVB Investment Services, Inc. is now a wholly owned, non-bank subsidiary of FCB.

(13)  **Defendant SVB Wealth, LLC** was a division of Silicon Valley Bank. SVB Wealth LLC is now a wholly owned subsidiary of FCB.

(14)  **Defendant First-Citizens Bank & Trust Company** (FCB), is a North Carolina state-chartered commercial bank and a wholly-owned subsidiary of First Citizens BancShares, Inc. FCB purchased SVB's assets and liabilities from the Federal Deposit Insurance Corporation and is SVB's successor. As a result, today, SVB, SVB Private, and SVB Investment Services, are all divisions of FCB.

(15)  **Defendant Greg Becker** (Becker) was the Chief Executive Officer (CEO) of SVB and SVB Financial Group. Becker approved the decision to terminate Leung.

(16)  **Defendant John Longley** (Longley) was the SVB Head of Private Bank, Wealth & Trust; Interim Head of SVB Private; and Leung's immediate supervisor during all times relevant to this Complaint. On his own or conspiring with others, he made the decision to terminate Leung. After SVB failed, Longley worked for FCB.

## FACTUAL ALLEGATIONS

(17)  In August 2022, Ms. Leung alerted SVB Private's Senior Counsel, Ajay Kattel, and SVB's Deputy Chief Compliance Officer, Jillana Downing, to several problems with SVB's weak compliance culture following the acquisition of Boston Private.

(18)  Throughout the summer and fall of 2022, Leung provided SVB Private's outside counsel, Ghillaine Reid, detailed emails and files to support her concerns about the Bank's weak compliance culture and associated risks.

(19)  In early October 2022, SVB Private's CEO Anthony DeChellis left the company. He was replaced on an interim basis by Defendant John Longley.

(20)  From October 2022 until her employment ended, Leung reported to Longley on a regular basis; consistently warning him that there were potential violations of fiduciary duties to clients, including inadequate processes and technology to manage customer investment portfolios and poor risk management process and issue escalation within the investment and trading teams. She also informed both internal and external counsel of litigation risks associated with these violations.

(21) Longley supervised SVB Private's wealth advisors and he was likely aware of the mishandling of client accounts and the inadequacy of the portfolio management platform that Leung was reporting to him. It was unclear to Leung whether Longley prioritized her concerns and was actively addressing them. To emphasize the importance of the issues she was raising and the need for action, Leung scheduled an in-person meeting with Longley.

(22) On or about October 19, 2022, Leung flew from Los Angeles to San Francisco to meet with Longley. During their meeting, she reiterated her concerns.

(23) Still concerned, in a December 2022 meeting, Leung repeated her warning, this time to Deputy General Counsel, Chester Te.

(24) On December 14, 2022, Leung emailed Longley. She noted that the problems were not simply operational, technological, or integration related, and that the company's current culture encouraged non-compliant behaviors. Leung reiterated that, given that clients' accounts continued to be unable to be viewed properly and potentially mismanaged, the issues needed to be addressed immediately.

(25) At no point did Longley or anyone else inform Leung that her concerns about client accounts were unfounded, had been investigated, or otherwise resolved. Thus, Leung felt an obligation to continue to raise these issues.

(26) On January 6, 2023, Leung told Longley that the failure to meet fiduciary obligations presented such great risk that the bank was in danger of being shut down if the issues were not properly addressed immediately. Leung communicated to Longley, as she had to others, that she believed SVB was not upholding its fiduciary duty and obligation to clients and that these failures were potentially violations of regulatory requirements.

(27) On January 18, 2023, Leung participated in a monthly Risk Review Meeting. During the meeting, she raised concerns about the delays in addressing the legacy Boston Private trust account issues which were also a part of the broader investment management platform, and which had not been addressed since prior to the acquisition.

(28) Leung reported to the Chief Compliance Officer and internal counsel about misrepresentations in the compliance manual, including about monitoring and responsibility to manage client portfolios against risk objectives.

(29) In or about January 2023, in response to the Registered Investment Advisor (RIA) Compliance Questionnaire certification, Leung declined to certify that there were no violations of the bank's manual relative to actual practice. She also informed internal counsel that there were violations of the Code of Conduct that might require disclosure in the 2023 attestation.

(30) In a February 7, 2023, interaction with the Private Bank's Senior Counsel, Leung relayed information that she received indicating that SVB Private's Chief Investment Officer had directed her team to amend process and procedure documents to ensure that the audit would pass and that problems and gaps causing the mishandling of accounts would not be brought to light. Leung expressed the concern that any coverup of the problems would be unlawful and could expose the bank to liability. Leung followed this conversation with an email to Longley, urging him to speak with key members of the investment operations and solutions teams who were also raising concerns that were ignored.

(31) On February 14, 2023, Leung had another conversation with the Private Bank's Senior Counsel. She expressed her concern that a lack of integrity and a tendency to ignore or hide difficult issues were still ongoing problems in the Private Bank. She noted that she and members of her team supported the audit process, but that it was an uphill battle when there were seemingly plans to manipulate the audit.

(32) Two days later, on February 16, 2023, Leung was laid off on a Zoom call from Human Resources Director Linda Spearman-Scott and Longley. They notified her that her employment was ending, that March 17, 2023, would be her official separation date, and that she would receive a written severance agreement. Becker approved Leung's layoff.

(33) From August 2022 through February 2023, Leung disclosed serious risk and compliance problems to lawyers and senior executives with authority over her and/or who had authority to investigate, discover, or terminate such conduct. The concerns she raised involved conduct or failures that Leung reasonably believed constituted violations of securities rules or regulations.

Leung's layoff was a pretext to unlawfully terminate her in retaliation for the concerns she raised and in violation of state and federal law.

(34) Leung's layoff violated SVB's Code of Conduct and the Bank's prohibitions against retaliation for reporting suspected violations. Leung's layoff also violated state and federal laws referenced herein.

(35) Leung was highly rated as an SVB Private executive with decades of industry experience at the largest, most respected firms. Her skills, including deep experience in risk management and investment platform construction, certifications, and licenses, were needed to operate SVB Private's wealth and investment management operations.

(36) Because Leung was highly rated, her skills were needed, and terminating her violated SVB's Code of Conduct, as well as state and federal law. Longley, Becker, and others who may have been involved in her layoff acted outside the scope of their authority as employees.

(37) Longley, Becker, and others involved in Leung's layoff acted with malice and implemented Leung's termination to hide and cover up the risk, compliance, and fiduciary duty violations Leung was raising.

(38) On February 17, 2023, Leung received a severance agreement. The agreement announced that Leung would "be treated as a terminated employee effective on her Separation Date" of March 17, 2023, and outlined the terms of a severance package that included substantial severance payments; covered six months of continuing healthcare benefits; and provided for Leung's participation in SVB Financial Group's outplacement services program, in exchange for a general release of claims "arising out of or in any way connected with Employee's employment with SVB."

(39) On March 10, 2023 – a week before Leung's separation date from SVB Financial Group – SVB was closed. The Federal Deposit Insurance Corporation (FDIC) instituted a receivership that resulted in the sale of SVB's assets and liabilities to FCB.

(40) On March 13, 2023, the FDIC transferred substantially all assets and certain liabilities of SVB to a newly created, 'bridge bank,' Silicon Valley Bridge Bank, N.A. (SVBB). The FDIC retained SVB liabilities under Section 2.02 of the Transfer Agreement between FDIC and SVBB.

(41) Leung never received the severance payments or benefits that SVB offered under the severance package.

(42) On March 27, 2023, the FDIC entered into a purchase and assumption agreement for SVBB, by First Citizens Bank & Trust Company ("FCB") of Raleigh, NC. As part of this transaction, SVB Wealth, LLC and SVB Investment Services became a wholly-owned, non-bank subsidiary of FCB.

(43) When FCB entered into the purchase and assumption agreement for SVBB, it had actual or constructive notice of Leung's whistleblower claims and/or the facts and circumstances giving rise to Leung's claims. FCB expressly assumed liability for "the Failed Bank Records," which are SVB's records, including employee information.

(44) The FDIC as receiver for SVB and SVBB, FCB, and SVB as a division of FCB each are a successor-in-interest of SVB and its subsidiaries or divisions, including SVB Investment Services, Inc., SVB Wealth LLC, and SVB Private.

(45) FCB acquired substantial assets of the SVB entities and continued SVB's banking and investment services without interruption or substantial change. FCB told former SVB clients that SVB's services would continue as before and emphasized that FCB was "committed to providing [clients] with a seamless experience."

(46) A substantial number of SVB employees, including employees from SVB Investment Services, SVB Wealth, and SVB Private, became employees of FCB.

(47) Former employees of the SVB entities who became FCB employees undertook the same or similar jobs, under similar working conditions, using similar methods and technology, with a similar organizational structure for FCB as they did when the SVB entities were their employers. Indeed, FCB websites highlights that clients should "work with [their same] team" because team members "are operating as they have been at SVB."

(48) Former employees of the SVB entities who became FCB employees work from the same locations they worked when the SVB entities were their employer.

(49) On May 26, 2023, and July 7, 2023, Leung filed her claims, including her Sarbanes-Oxley claim, with the FDIC pursuant to the Financial Institutions Reform, Recovery, and Enforcement

Act, 12 U.S.C. § 1821(d)(3). On or about November 21, 2023, Leung learned that the FDIC denied her claims in their entirety. By this action, Ms. Leung files suit on claims that she administratively exhausted under 12 U.S.C. § 1821(d)(3).

(50) On August 11, 2023, Leung also filed a retaliation complaint with the U.S. Department of Labor, alleging that Defendants violated 18 U.S.C. 1514A of the Sarbanes Oxley Act (SOX). Pursuant to 18 U.S.C. § 1514(A)(b)(1)(B), if the U.S. Department of Labor has not issued a decision on Ms. Leung's complaint by February 7, 2024, then Leung may file suit in federal court.

(51) The SVB Defendants encouraged employees to purchase stock through their employee stock ownership plan (ESOP) and granted restricted stock units (RSUs) and stock options as an important, and often significant, part of employee compensation. SVB provided RSUs and stock options to Ms. Leung and other employees through a vesting plan and distribution schedule after she achieved required performance milestones and/or upon remaining with SVB for a particular length of time.

(52) Leung met or exceeded her performance and other metrics and received RSUs and stock options as part of her compensation.

## Count 1
### Retaliation in Violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A
### (Against All Defendants)

(53) Leung incorporates and restates the proceeding paragraphs.

(54) Leung reported known or suspected violations of SEC rules or regulations and known or suspected misrepresentations to shareholders and customers to SVB supervisory authorities, including SVB lawyers, with duties and authority to address that misconduct.

(55) Leung had reasonable cause to believe that the problems she was reporting were violations of state or federal laws, including 18 U.S.C. § 1348 (securities fraud), Investment Advisors Act of 1940, 15 U.S.C. § 80b, and/or the rules or regulations of the Securities and Exchange Commission.

(56) Silicon Valley Bank, SVB Investment Services, Inc., and SVB Wealth, LLC (SVB Defendants), Longley and Beck were aware of Leung's reporting of known or suspected violations prior to her termination.

(57) The SVB Defendants, Longley and Beck wrongfully terminated Leung.

(58) Leung's reporting of known or suspected violations contributed to the SVB Defendants', Longley's and Beck's and FCB's decisions to terminate and/or not rehire her.

(59) By reason of Defendants' conduct alleged above, Leung's has suffered significant economic and non-economic damages.

(60) Defendants are liable for the conduct alleged above. The FDIC and FCB are liable as the SVB Defendants' successors.

**Count 2**
**Retaliation in Violation of California Labor Code § 1102.5(b)**
**(Against All SVB Defendants, FDIC and FCB)**

(61) Leung incorporates and restates the proceeding paragraphs.

(62) The SVB Defendants were Leung's employers.

(63) Leung reported known or suspected violations of SEC rules or regulations and known or suspected misrepresentations to shareholders and customers to SVB supervisory authorities with duties and authority to address that misconduct.

(64) The SVB Defendants and FCB believed that Leung disclosed, or that she might disclose, information concerning known or suspected violations of SEC requirements and other violations to government or law enforcement agencies.

(65) Leung had reasonable cause to believe that the problems she was reporting were violations of state or federal laws, including 18 U.S.C. § 1348 (securities fraud), Investment Advisors Act of 1940, 15 U.S.C. § 80b, and/or the rules or regulations of the Securities and Exchange Commission.

(66) Leung's reporting of known or suspected violations contributed to the SVB Defendants' and FCB's decision to terminate and/or not to rehire her.

(67)   By reason of the SVB Defendants' and FCB's conduct alleged above, Leung has suffered significant economic and non-economic damages.

(68)   Defendants are liable for the conduct alleged above. The FDIC and FCB are liable as the SVB Defendants' successors.

### Count 3
### Termination in Violation of Public Policy
### (Against All SVB Defendants, FDIC, and FCB)

(69)   Leung incorporates and restates the proceeding paragraphs.

(70)   The SVB Defendants were Leung's employers.

(71)   The SVB Defendants and FCB terminated and/or refused to rehire Leung.

(72)   Leung's reporting violations of SEC rules or regulations and misrepresentations to shareholders and customers, as well as violations of state and federal whistleblower protection laws, were a substantial motivating reason for the Defendants' decision to terminate and/or not rehire her.

(73)   Because of their conduct alleged above, Leung has suffered substantial economic and non-economic damages.

(74)   Defendants are liable for the conduct alleged above. The FDIC and FCB are liable as the SVB Defendants' successors.

### Count 4
### Retaliation in Violation of California Labor Code § 232.5
### (Against the SVB Defendants, FDIC, and FCB)

(75)   Leung incorporates and restates the proceeding paragraphs

(76)   The SVB Defendants were Leung's employers.

(77)   The SVB Defendants and FCB terminated and/or refused to rehire Leung.

(78)   Leung disclosed known or reasonably suspected violations of SEC rules or regulations and known or reasonably suspected misrepresentations to shareholders and customers, and serious risk management and compliance problems to the SVB Defendants, who had duties and authority to correct them.

(79)   Leung's disclosures were a substantial motivating reason for her termination and/or decision not to rehire her.

(80)     Leung has suffered substantial economic and non-economic damages as a result of the SVB Defendants' actions.

(81)     Defendants are liable for the conduct alleged above. The FDIC and FCB are liable as the SVB Defendants' successors.

**Count 5**
**Intentional Interference with Prospective Economic Relations**
**(Against Defendants Longley and Becker)**

(82)     Leung incorporates and restates the proceeding paragraphs

(83)     Leung was in a productive economic relationship with the SVB Defendants before Defendants Longley and Becker intentionally interfered and caused her business relationship with the SVB Defendants to come to an end.

(84)     Defendants Longley and Becker were senior executives who supervised Leung. They directly received or were aware of Leung's disclosures about known or reasonably suspected violations of rules or regulations of the Securities and Exchange Commission (SEC), misrepresentations to shareholders and customers, and serious risk management and compliance problems.

(85)     Defendants Longley and Becker violated SVB's Code of Conduct and state and federal law when they intentionally retaliated against Leung for making her disclosures and tried to cover them up. By these actions, Longley and Becker acted outside the scope of their employment as senior executives.

(86)     By taking actions to ensure that Leung would be terminated, Longley and Becker disrupted Leung's business relationship resulting in significant economic and non-economic damages. Their actions caused Leung not only to lose her job but prevented her from being rehired by the SVB Defendants and FCB after SVB's collapse.

(87)     Longley and Becker's actions were a substantial factor causing the harm Leung suffered.

**PRAYER FOR RELIEF**

For the reasons outlined above, Leung seeks make-whole equitable relief and damages, and asks the Court to enter judgment in her favor and against the Defendants jointly and severally

(a) Declaring Defendants' actions unlawful;

(b) For each Count, declaring the responsible Defendants jointly and severally liable;

(c) Granting equitable and/or injunctive relief to Leung, including immediate reinstatement to her position or an equivalent position or, in lieu of reinstatement, front pay;

(d) Awarding compensatory damages, including emotional distress;

(e) Awarding back pay, lost wages and benefits, including stock and bonuses;

(f) Awarding punitive damages;

(g) Awarding Leung compensation for special damages pursuant to 18 U.S.C. 1514A, including litigation costs, expert witness fees, and reasonable attorney fees;

(h) Awarding Leung reasonable attorneys' fees, costs, and expenses;

(i) Awarding Leung pre- and post-judgment interest at the maximum rate permitted by law; and

(j) All such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury.

Dated this 19th day of January, 2024.

*s/ Jane Jumin Kim*

Jane Kim
Richard E. Condit
Ellen Eardley
Cleveland Lawrence III
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel 202.822.5100
jkim@findjustice.com
rcondit@findjustice.com
eeardley@findjustice.com
clawrence@findjustice.com

|  |
|---|
| Laura L. Ho |
| lho@gbdhlegal.com |
| GOLDSTEIN, BORGEN, DARDARIAN & HO |
| 155 Grand Avenue, Suite 900 |
| Oakland, CA 94612 |

*Counsels for Jane Leung*