UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY JANE LEUNG,

          Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.,

          Defendants.

Case No. 24-cv-00337-NW

**ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS AND
DENYING MOTION TO STAY
DISCOVERY AS MOOT**

Re: ECF Nos. 106, 108, 109, 110

       Before the Court are motions to dismiss from the Federal Deposit Insurance Company acting in its capacity as receiver to SVB ("FDIC-R"), John Longley ("Longley"), and Greg W. Becker ("Becker") and FDIC-R's motion to stay discovery. ECF Nos. 106, 108, 109, 110. The Court DENIES Longley and Becker's motions to dismiss, and GRANTS in part and DENIES in part FDIC-R's motion to dismiss without leave to amend. Defendants' motion to stay is denied as moot.

# I.     BACKGROUND

       The Court previously summarized Plaintiff's allegations in its prior order partially dismissing portions of Leung's initial complaint with partial leave to amend. *See Leung v. Fed. Deposit Ins. Corp.*, No. 24-CV-00337-BLF, 2024 WL 3588015 (N.D. Cal. July 29, 2024) ("*Leung I*"), ECF No. 92. These allegations remain largely unchanged and are not repeated here. The Court therefore only references facts as alleged in Plaintiff's FAC that are pertinent to the Court's analysis in this Order.

## A.     Facts

       Leung began working at Silicon Valley Bank ("SVB") Private, a division of SVB, in 2020. FAC ¶ 2. From August 2022 through February 2023, Leung consistently warned her direct

1  supervisor, Longley, as well as others in the organization, that SVB was violating federal

2  securities laws and regulations.  FAC ¶¶ 20-36, 39.  On February 7, 2023, Leung made explicit

3  complaints to Ghillaine Reid, outside counsel to SVB Private, regarding instructions Leung

4  received to falsify documents.  *Id.* ¶ 35.  Leung then emailed Longley about the conversation and

5  urged him to intercede.  *Id.*  Leung had a second conversation with Reid about her concerns one

6  week later on February 14, 2023.  *Id.* ¶ 36.

7      On February 16, 2023, Longley and an HR representative told Leung that she was being

8  terminated effective March 17, 2023.  *Id.* ¶ 37.

9      Becker, SVB's CEO and Longley's supervisor, signed off on Leung's termination.  *Id.*

10  Leung received a severance agreement that included "substantial severance payments" and other

11  benefits, in exchange for a general release of claims.  *Id.* ¶ 42.  From February through March,

12  counsel for Leung attempted to communicate with SVB regarding "the circumstances surrounding

13  the decision to terminate her."  *Id.* ¶ 43.  SVB failed and closed on March 10, 2023, and the

14  California Department of Financial Protection and Innovation appointed FDIC-R as the Receiver.

15  *Id.* ¶ 1, 3.  As receiver, FDIC-R assumed control of all of SVB's "assets, rights, powers, liabilities,

16  books and records of SVB, ***including SVB's interest and status as a Defendant in this action.***"

17  *Id.* ¶ 18 (emphasis added); FDIC-R Notice of Substitution as Defendant for SVB, ECF No. 53

18  (substantively identical language).  The Court notes that when SVB failed on March 10, 2023,

19  FDIC-R immediately "stepp[ed] into the shoes" of SVB, taking on all its assets and liabilities.

20  *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 86–87 (1994).  On March 13, 2023, SVB's counsel

21  informed Leung's counsel "that Leung's request to discuss the circumstances of her proposed

22  layoff and severance agreement was being relayed to FDIC."  *Id.* ¶ 45.  However, SVB's counsel

23  stated, "that they had no authority to speak with Leung's counsel about the issues surrounding her

24  termination and severance."  *Id.*  Though Leung tried multiple times to discuss her termination

25  with the relevant parties, she was repeatedly rebuffed.  FAC ¶¶ 52-54.  "Leung never received any

26  payments of salary or compensation for accrued leave from FDIC-R" or any other entity.  *Id.* ¶ 55.

27      On March 13, 2023, FDIC-R organized Silicon Valley Bridge Bank, NA ("SVBB") in

28  accordance with 12 U.S.C. § 1821(n) and transferred all SVB's assets and ***certain*** SVB liabilities

1    to SVBB.  FAC ¶ 3; *see generally* Transfer Agreement, RJN Ex. 1, ECF No. 107.[1]  Because

2    FDIC-R retained all liabilities except for those expressly assumed by SVBB, FDIC-R retained any

3    liability related to Leung and her termination.  *Id.* art. 2.02(b)(i).  On March 27, 2023, FDIC-R

4    sold SVBB to First Citizen's National Bank & Trust ("FCB").  Purchase and Assumption

5    Agreement ("P&A Agreement"), RJN Ex. 2, ECF No. 107.  Though FCB hired some of Leung's

6    former colleagues, it did not offer employment to Leung.  FAC ¶¶ 59-61.

7    **B.    Procedural Posture**

8        Leung filed an initial complaint against FCB, FDIC-R,[2] Longley, and Becker on January

9    19, 2024.  *See generally Leung I.*  The initial complaint alleged a combination of federal and state

10   retaliation claims plus an intentional interference with prospective economic relations against

11   Longley and Becker.  *Id.*  Defendants FCB, Longley, and Becker moved to dismiss that complaint;

12   FDIC-R submitted an answer to the four retaliation claims alleged against it.  *Id.* at *2; FDIC-R

13   Answer, ECF No. 55.

14       The Court granted FCB's motion and dismissed FCB from the suit with prejudice because

15   "the Transfer Agreement and P&A Agreement are clear that FCB did not assume SVB's liability

16   for Plaintiff's claims."  *Leung I* at *5.  Leung's claims, which "arise from employment actions

17   taken by SVB and its employees . . . clearly fall under the litigation claims retained by the FDIC-R

18   under § 2.02 of the Transfer Agreement."  *Id.*  As a result, Leung had no relationship with FCB

19   that could give rise to her alleged retaliation claims.

20       Both Longley and Becker moved to dismiss the two claims asserted against them: (1) a

21   Sarbanes-Oxley ("SOX") whistleblower retaliation claim ("SOX Claim"), and (2) intentional

22   interference.  *Id.* at *7-10.  The Court found that Leung adequately alleged the four elements of a

23   whistleblower claim as to Longley.  *Id.*  As to Becker, the Court found that Leung failed to allege

24

25   _____

     [1] As explained in the Court's prior order, the Court judicially notices the Transfer Agreement and
26   P&A Agreement "because both documents are . . . matters of public record not subject to
     reasonable dispute and because these documents are incorporated by reference in Plaintiff's
27   Complaint."  *See Leung I* at *3.
     [2] Leung initially sued FDIC in its capacity as a corporation ("FDIC-C") and SVB, which ceased to
28   exist as of March 10, 2023.  Notice of Substitution, ECF. No. 53.  Those parties were removed
     from this case when FDIC-R substituted into the place of those defendants.  *Id.*

United States District Court
Northern District of California

1  elements two and four of a SOX Claim by failing to allege (1) that Becker had adequate

2  knowledge of Leung's protected activity, and (2) that Becker caused Leung's termination. *Id.* at

3  *10. Though the Court dismissed that claim, it granted leave to amend. The Court dismissed the

4  intentional interference claims against both Longley and Becker with leave to amend, but Leung

5  dropped that claim from her FAC. *Id.* at *9-11; *see generally* FAC.

6        Leung filed her FAC on August 29, 2024. FAC. Leung's FAC substantiates and expands

7  on allegations made in the original complaint, though Leung added two new claims without leave

8  of Court: a fifth retaliation claim and a third-party beneficiary breach of contract claim, both

9  against FDIC-R.

10        Each defendant filed a motion to dismiss the FAC. The FAC realleges just the SOX Claim

11  against Longley and Becker, which they both have moved to dismiss. Leung brings all six claims

12  in the FAC against FDIC-R: the four claims previously alleged in the original complaint and the

13  two new claims.

14  **II.**      **LEGAL STANDARD**

15        **A.**      **Motion to Dismiss**

16        Under Fed. R. Civ. P. 12(b)(6), a complaint or cause of action can be dismissed where the

17  pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss on

18  those grounds, the "complaint must contain sufficient factual matter, accepted as true, 'to state a

19  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

20  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged." *Id.*

23        The Court must accept the well-pleaded allegations of fact in the complaint as true and

24  must construe those facts—and all inferences from those facts—in the light most favorable to the

25  Plaintiff. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). But the

26  Court need not accept as true "legal conclusions cast in the form of factual allegations if those

27  conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness*

28

United States District Court
Northern District of California

4

1    *Network*, 18 F.3d 752, 754-755 (9th Cir.1994); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.

2    2003).

3         **B.    Request for Judicial Notice**

4         When assessing the sufficiency of a complaint under Federal Rule of Civil Procedure

5    12(b)(6), district courts generally cannot consider material outside of the pleadings. *Khoja v.*

6    *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, this prohibition does

7    not apply to the judicial notice doctrine under Federal Rule of Evidence 201 or the incorporation

8    by reference doctrine. *Id.* A court may take judicial notice of facts "not subject to reasonable

9    dispute" because they are either (1) "generally known within the trial court's territorial

10   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

11   reasonably be questioned." Fed. R. Evid. 201. In contrast, a document "may be incorporated by

12   reference into a complaint if the plaintiff refers extensively to the document or the document

13   forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

14   2003). Once incorporated by reference, a district court "may assume that its contents are true for

15   purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* However, "it is improper to assume the

16   truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-

17   pleaded complaint." *Khoja*, 899 F.3d at 1003.

18        FDIC-R asks the Court to take judicial notice of seven exhibits. Exhibits 1 and 2, the

19   Transfer Agreement and the P&A agreement, were judicially noticed in the Court's earlier order

20   and will likewise be noticed here for the reasons discussed in that order. The remaining

21   documents fall into three categories: (1) the official closing documents of the Failed Bank issued

22   by the California Department of Financial Protection and Innovation ("DFPI") (RJN Exs. 3-5), (2)

23   findings of fact related to Leung's OSHA complaint (RJN Ex. 6), and (3) Leung's objection in the

24   SVB bankruptcy proceedings (RJN Ex. 7). The Court will take judicial notice of the closing

25   documents (RJN Exs. 3-5) because there is no dispute as to their authenticity, and the documents

26   do not create disputes of fact but instead merely provide additional context related to SVB's

27   failure and FDIC's appointment as receiver.

28        The latter two documents, however, Exs. 6 and 7, are not appropriate for judicial notice.

United States District Court
Northern District of California

The guiding principle of the judicial notice doctrine is that materials are not to be considered by the Court if they create issues of facts within the complaint. *Khoja*, 899 F.3d at 1002 (refusing to notice documents submitted to "create a defense to the well-pled allegations in the complaint."). Accepting such documents would allow defendants to "insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* By requesting the Court take judicial notice of documents related to the OSHA complaint and Leung's objection in the bankruptcy proceeding, FDIC-R attempts to do just that - insert their own version of the events into the complaint. FDIC-R provided those documents to demonstrate that this case "has already been thoroughly investigated and denied by OSHA," so the Court need not allow another proceeding. FDIC-R Mot. at 4. Similarly, the purpose of FDIC-R's request for judicial notice of the document related to the bankruptcy proceedings is to attempt to directly rebut Leung's allegations regarding her employment relationship with SVB, a purpose at odds with the judicial notice doctrine. *Id.* at 4. Nor can FDIC-R rely on the incorporation by reference doctrine. The mere reference to the fact that Leung filed an OSHA complaint in the FAC is insufficient to compel incorporation by reference because Leung does not "refer[] extensively to the document" nor does the document "form[] the basis of" Leung's complaint. FAC ¶ 63; *Ritchie*, 342 F.3d at 908. As to Exhibit 7, Leung never alludes to the existence of a bankruptcy proceeding in her FAC, so documents related to that proceeding cannot be incorporated by reference. *See* FAC generally.

## III.    DISCUSSION

### A.    Standing

Defendants contend that the new amendment to the complaint exposes a fatal, standing stripping flaw in Leung's allegations. In the FAC, Leung alleges that SVB told her she was to be fired March 17, 2023, but that the termination "was never executed." FAC ¶ 5. These admissions, Defendants argue, demonstrate that Leung never sustained an injury, thereby stripping the suit of standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *See* Longley Mot. at 11-12, ECF No. 109; Becker Mot. at 12, ECF No. 108; FDIC-R Mot. at 14-15, ECF No. 106. Leung responds that the actual termination need not have happened to sufficiently allege that she suffered from an adverse employment action. Pl's Opp'n to Longley Mot. at 7, ECF No. 115. Instead, the

communication of her impending termination was sufficient to state a claim of adverse

employment action. *Id.*

    The Court agrees and finds that Leung suffered an adverse employment action when she

learned of her termination on February 16, 2023. "Under federal law, a claim for unlawful

termination accrues on the day the employee is informed of their impending discharge." *Miller v.

Watson*, No. 20-35922, 2021 WL 5905722, at *1 (9th Cir. Dec. 14, 2021); *Coppinger-Martin v.

Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (SOX claim accrued when complainant "learned of the

actual injury, i.e., that [complainant's employer] had decided to terminate her employment.").

When viewed in the light most favorable to Plaintiff, Leung sufficiently alleges that actual injuries

began at the time she learned of her termination. FAC ¶ 66 ("Leung suffered emotional distress as

a result of the shocking and traumatic circumstances of her unlawful termination."). Additionally,

Leung sufficiently alleges that she was later injured when she failed to receive "any payments or

compensation for accrued leave" to which she was otherwise entitled. FAC ¶ 55.

    As alleged, in retaliation for her whistleblowing, SVB fired Leung on February 16, 2023

(effective 30-days after she was informed), which was a clear violation of SOX. Leung

presumably experienced the disappointment and fear that often follows a wrongful firing, even if

her last day of work would not be until a month later. The harm that occurred from February 16 to

March 10 does not evaporate because of SVB's intervening collapse. In short, Leung alleges that

SVB, through the actions of Longley and Becker, injured her; FDIC-R assumed all SVB's

liabilities and any associated injuries, including Leung's.

    **B.    SOX Claims Against Longley and Becker[3]**

    The Court explained the elements of a SOX claim in *Leung I*:

> "SOX grants 'whistleblower' protection to employees of publicly
> traded companies by prohibiting employers from retaliating against
> employees for reporting certain potentially unlawful
> conduct." *Coppinger-Martin*, 627 F.3d at 748–49 (citing 18 U.S.C. §
> 1514A). In order to state a claim for a violation of SOX, an employee
> must allege that "(1) the employee engaged in protected activity; (2)

---

[3] Leung withdrew her claims for punitive damages against Longley and Becker in her respective
oppositions to their motions. *See* Pl's Opp'n to Longley Mot. at 8; Pl's Opp'n to Becker Mot. at 6,
ECF No. 114.

United States District Court
Northern District of California

the employer knew, actually or constructively, of the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the personnel action." *Id.* at 750 (citing 29 C.F.R. § 1980.104(b)(1)).

### 1.    Longley

Longley concedes that the Court previously denied his motion to dismiss the SOX Claim, but he insists that the "changed substance and nature of [Leung's] allegations in the FAC" require the Court to reconsider that decision. Longley Mot. at 5. But the majority of Leung's arguments in this new motion to dismiss are predicated on Leung's supposed failure to allege an injury-in-fact, a challenge that the Court rejected.[4] *Id.* at 9-13. The remainder of Longley's motion is dedicated to rehashing arguments that the Court dismissed in *Leung I*. *Id.* at 14-15. The Court will not disturb those findings.

Accordingly, Longley's motion to dismiss is DENIED.

### 2.    Becker

For the same reasons stated above, the Court rejects Becker's argument that Leung failed to allege an injury-in-fact. Becker Mot. at 12-13. His motion is otherwise dedicated to renewing the arguments from his initial motion to dismiss. *See Leung I* at *10.

In *Leung I*, the Court found that Leung failed to "adequately allege[] the second and fourth elements of a SOX claim against Becker." *Id.* Respectively, Leung's allegations were "insufficient for the Court to draw a reasonable inference [1] that Becker knew of Plaintiff's protected activity or [2] that her protected activity was a contributing factor in his decision to terminate her." *Id.*

In her first complaint, Leung only alleged "that Becker approved the decision to terminate Plaintiff." *Id.* The FAC supplements that single assertion with the following allegations:

---

[4] Longley's arguments not founded in standing are particularly unavailing. He argues the FAC fails to allege that Longley "was somehow responsible" for FDIC-R or SVBB's conduct. Longley Mot. at 10. This argument is in direct contravention to the FAC: Leung alleges at the outset that "Longley['s] . . . retaliatory and discriminatory actions against Leung violated state and federal laws and caused Leung to suffer significant economic and non-economic damages from which she seeks relief from this Court." FAC ¶ 7. To the extent Leung at times attributes responsibility to FDIC-R rather than Longley or SVB, it is because FDIC-R "stepp[ed] into the shoes" of SVB when it became receiver to the bank, meaning Longley's retaliatory conduct on SVB's behalf remains actionable.

(i)   Becker was responsible for risk management at the bank, even serving for a time as the acting Chief Risk Officer (CRO) for about eight months.  FAC ¶ 15.

(ii)   Becker received reports from risk and compliance teams and was the final decision maker for issues affecting the bank's performance and legal obligations.  *Id.*

(iii)   Becker hired outside counsel Ghillaine Reid for SVB Private to investigate the bank for compliance issues, and she reported directly to him.  Leung made multiple disclosures to Reid.  *Id.* ¶ 21.

(iv)   Becker supervised Longley, who in turn supervised SVB Private's wealth advisors like Leung.  *Id.* ¶ 22.

(v)   "On information and belief, Becker was made aware of" meetings where Leung raised concerns about company practice.  *Id.* ¶ 31.

(vi)   Becker falsely reported to the SEC regarding the sufficiency of SVB's risk management framework, though he had been "made aware of the serious risk and compliance issues being faced by the" bank.  *Id.* ¶ 32.

(vii)   Becker, among others who had the authority to initiate audits and investigations, appeared to ignore Leung and the issues she was trying to rectify.  *Id.* ¶ 39.

(viii)   Becker was aware of Leung's reporting and wrongfully terminated her.  *Id.* ¶¶ 71-72, 93.

The first question before the Court is whether Leung has adequately alleged that Becker "knew or suspected that [Leung] engaged in the protected activity" even though she never directly reported any concerns to Becker.  29 C.F.R. § 1980.104(e)(2)(ii).  Construing the facts in the light most favorable to Plaintiff, the Court finds that Leung has met that threshold.  Though she never reported her concerns directly to Becker, the FAC alleges that Becker was sufficiently enmeshed in risk management and compliance to not have been made aware of Leung's months of complaints to Longley, Reid, and others who reported directly to him.  FAC ¶¶ 15, 21-22.  The nature of Leung's complaints went to the bank's risk management and compliance, and Leung alleges that Becker was the "final decision maker" for those types of issues.  *Id.* ¶ 15.  She further alleges that "Becker approved Leung's layoff."  *Id.* ¶ 37.  At this stage, Leung has pleaded

1  sufficient facts to indicate Becker knew or suspected that Leung had made complaints related to

2  risk management.

3     The next question is whether Leung adequately alleged that her complaints contributed to

4  the termination of her employment.  In the context of SOX, this is a low standard:

> While many statutes dealing with employment discrimination apply a
> higher bar, requiring the plaintiff to show that his protected activity
> was a motivating or substantial factor in the adverse action, the
> incorporation of the contributing-factor standard in Sarbanes-Oxley
> reflects a judgment that "'personnel actions against employees should
> quite simply not be based on protected [whistleblowing] activities'
> "—not even a little bit.

9  *Murray v. UBS Sec., LLC*, 601 U.S. 23, 36–37 (2024) (quoting *Marano v. Dep't of Justice*, 2 F.3d

10  1137, 1141 (Fed. Cir. 1993)) (internal citations omitted).  In the Ninth Circuit, "causation can be

11  inferred from timing alone where an adverse employment action follows on the heels of protected

12  activity."  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009) (quoting *Villiarimo*

13  *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)).  Leung alleges that she was

14  terminated just two days after reporting additional risk management concerns to Reid, Becker's

15  direct report.  FAC ¶ 36-37.  Given the low standard of *Van Asdale*, a two-day interval between

16  Leung's complaint and an adverse employment action withstands a motion to dismiss.

17     Accordingly, Becker's motion to dismiss is denied.

18  **C.    FDIC**

19       **1.    Retaliation Counts (Counts 1-4)**

20     FDIC-R chose to answer Leung's initial complaint on May 6, 2024.  FDIC-R Answer.

21  Among other things, FDIC-R admitted that it "retained liabilities contained in several provisions

22  [of the Transfer Agreement], including, but not limited to, Sections 1.02, 2.02, 2.03, 2.06, 2.07."

23  *Id.* ¶ 40.  After the Court granted Leung leave to amend her complaint, Leung renewed four causes

24  of action she had already brought against FDIC-R and added two additional claims.  Now, though

25  Counts 1-4 in the FAC are substantively indistinguishable from those brought in the original

26  complaint, FDIC-R moves to dismiss all six claims of the FAC.[5]  FDIC-R  does not disclaim any

27  _____

28  [5] FDIC-R's answer included "failure to state a claim" as an affirmative defense, but courts in this

admissions made within its Answer and is thus bound to them until it files a superseding pleading.

There is no bright line rule in the Ninth Circuit regarding whether a defendant who has answered a complaint may move to dismiss a substantively similar amended complaint. *See Jenni Rivera Enters. LLC v. Cintas Acuario Inc.*, No. 2:23-CV-07847-SB-JC, 2024 WL 5275506, at *2 (C.D. Cal. Nov. 18, 2024); *cf. Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951 (N.D. Cal. 2024) (allowing defendants to make new arguments in subsequent motions to dismiss because "no answer has been filed."). Nevertheless:

> several courts in this circuit have concluded that the filing of an amended pleading does not revive the opposing party's right to file a motion to dismiss after that party has answered the prior pleading. *See, e.g.*, *Brooks v. Caswell*, No. 3:14-CV-01232, 2016 WL 866303, at *2 (D. Or. Mar. 2, 2016) (collecting cases); *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. 15-CV-0837-DOC, 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016) (following *Brooks*); *see also* C. Wright & A. Miller, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed. 1998) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

*Jenni Rivera*, 2024 WL 5275506, at *2. In keeping with other courts in this Circuit, the Court finds that FDIC-R's Answer to Counts 1-4 as alleged in the original complaint bars any attempts to move to dismiss those claims.

The merits of FDIC-R's arguments do not require a different outcome. In its Notice of Substitution, FDIC-R affirmatively adopts SVB's liability for Leung's claims: "By operation of federal law, the FDIC-Receiver, upon its appointment, instantly ***succeeded*** to all of the failed bank's rights, titles, powers, privileges, assets, books and records of Silicon Valley Bank, ***including it's [sic] interest and status as a Defendant in this action***." ECF No. 53 (emphasis added). As the Court previously stated, "Plaintiff's claims clearly fall under the litigation claims retained by the FDIC-R under § 2.02 of the Transfer Agreement" and "the language of the P&A Agreement is clear that the FDIC-R did not expressly transfer liability for Plaintiff's claims to FCB." *Leung I* at *5. Thus, the FAC sufficiently alleges that FDIC-R is liable for Leung's

_____

Circuit do not consider that a proper affirmative defense and refuse to entertain them. FDIC-R Answer ¶ 88; *Fed. Deposit Ins. Corp. v. Ching*, 189 F. Supp. 3d 978, 987 (E.D. Cal. 2016).

United States District Court
Northern District of California

1    alleged injury.

2         The allegations in the FAC, when considered in the light most favorable to Leung,

3    establish that Leung was injured by SVB.  The liability for that injury, accrued on February 16,

4    2023 and borne by SVB, did not dissipate when SVB failed.  In "step[ing] into the shoes" of SVB,

5    FDIC-R assumed that and all other assets and liabilities previously belonging to SVB.

6    *O'Melveny*, 512 U.S. at 87.  The Court's previous order explains, in depth, how Leung's claim

7    stayed with FDIC-R instead of transferring to SVBB and subsequently FCB.  *Leung I* at *4-7.

8    And FDIC-R has already admitted this.  Notice of Substitution, ECF No. 53.  The Court will not

9    permit FDIC-R to disclaim that admission now, not least because the admission appears to

10   confirm FDIC-R's role as successor to SVB.  *See also* 12 U.S.C. § 1821(d)(2)(A) ("[FDIC] shall,

11   as conservator or receiver, and by operation of law, succeed to—all rights . . . of the insured

12   depository institution . . ."); *O'Melveny*, 512 U.S. at 87 ("[Section] 1821(d)(2)(A)(i) places the

13   FDIC in the shoes of the [failed bank], to work out its claims . . . except where some provision in

14   the extensive framework of FIRREA provides otherwise.").

15        FDIC-R attempts to free itself of its obligations by insisting that Leung's "claims rise and

16   fall based on the existence of an employment relationship between Plaintiff and FDIC-R."

17   FDIC-R Mot. at 2.  The Court disagrees.  Leung's claims rise and fall based on the transfer of

18   liability for Leung's retaliation claim from SVB to FDIC-R,[6] and Leung has alleged such a

19   transfer.  Though articulated as an employee-employer relationship in the FAC, the Court

20   considers Leung's claims as an allegation of a relationship between herself and FDIC-R, whether

21   that be of employer, trustee, fiduciary, or something else.  Regardless, a relationship of

22   indeterminate character arose between them when FDIC-R succeeded SVB and FDIC-R became

23   the proper defendant in Leung's suit.

24        At a minimum, the FAC alleges that Leung, still an employee of SVB on March 10, 2023

25

26   ───────────────
     [6] The transfer of liabilities like Leung's to the receiver aligns with FIRREA's requirement that
     "any party wishing to pursue a claim against a failed institution or its assets to present that claim
27   to the receiver."  *Burns v. Fed. Deposit Ins. Corp.*, No. 13-CV-7187, 2018 WL 905505, at *8
     (N.D. Ill. Feb. 15, 2018); *Texas Refrigeration Supply, Inc. v. F.D.I.C.*, 953 F.2d 975, 983 n.16 (5th
28   Cir. 1992) ("Ordinarily, the FDIC is the sole proper defendant to claims of wrongdoing against an
     insolvent bank.").

United States District Court
Northern District of California

1    when the bank failed, was entitled to the benefits and pay her colleagues received until at least

2    March 17.  FAC ¶¶ 44, 48.  Instead, it appears from the FAC that FDIC-R ignored Leung entirely

3    and failed to compensate her after that date.  *Id.* ¶ 55.  Whether, why, how, and for how long

4    FDIC-R paid Leung (or had the bridge bank it chartered, SVBB, pay her) is an issue of fact that is

5    outside the scope of a motion to dismiss.  *See* Transfer Agreement § 6.12 ("(a) The Bridge Bank is

6    responsible for all salaries and payroll costs for all Failed Bank employees from the Bank Closing

7    Date until the Bridge Bank makes a final determination as to whether it will retain or terminate

8    that employee.").

9    **2.    Retaliation Under 12 U.S.C. § 1831j (Count 5)**

10    FDIC-R argues that Leung did not properly allege a claim under § 1831j because she must

11    allege that she "provided information to a federal banking agency regarding a possible violation of

12    law or regulation" by SVB.[7]  The Court agrees.  "Section 1831j . . . requires a whistleblower

13    employee or former employee of a national bank to report the alleged wrongdoing to the agency

14    that regulates the bank or to the Attorney General."  *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483,

15    491 (11th Cir. 2015).  As discussed above, Leung experienced an adverse employment action

16    when SVB informed her of her termination on February 16, 2023.  The FAC does not allege that

17    Leung ever reported SVB to an entity outside the organization.  Leung's argument in her

18    opposition that either she or someone else made FDIC-R and/or SVBB aware of her complaints

19    stretches the statute's meaning of "provided information," and is also belied by the timeline she

20    sets out in the FAC.  Under the statute, the discharge or discrimination alleged must be a result of

21    the whistleblowing; that's impossible here, given Leung was terminated before FDIC-R became

22    involved with the bank.

23    The Court GRANTS FDIC-R's motion to dismiss Count 5 and dismisses the claim

24    WITHOUT LEAVE TO AMEND.

25

26

_____

27    [7] In pertinent part, § 1831j prohibits banks from "discharge[ing] or otherwise discriminat[ing]
against any employee . . . because the employee (or any person acting pursuant to the request of
28    the employee) provided information to" the federal government.  12 U.S.C. § 1831j(a)(1).

United States District Court<br/>Northern District of California

United States District Court
Northern District of California

### 3.    Breach of Contract – Third Party Beneficiary (Count 6)

Leung alleges that the terms of the Transfer Agreement afford her status as a third-party beneficiary.  "For a third party to be able to recover on a contract, it must be able to show that the contract was made with the 'express or implied intention of the parties to the contract to benefit the third party.' "  *Dollar Tree Stores Inc. v. Toyama Partners LLC*, No. C 10-0325 SI, 2011 WL 872724, at *3 (N.D. Cal. Mar. 11, 2011).  In response, FDIC-R points to the Transfer Agreement's provision disclaiming third party beneficiaries as evidence dooming Leung's claim.  The case law indicates that a provision like that is dispositive.  In the Ninth Circuit, "No Third Party Beneficiaries" clauses "unambiguously manifests an intent not to create any obligations to third parties."  *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 647 (N.D. Cal. 2024), *reconsideration denied,* No. 21-CV-01155-EJD, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) (quoting *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010)).  Additionally, a successful claim needs to overcome the presumption against third-party beneficiaries in government contracts.  "'Parties that benefit from a government contract are generally assumed to be incidental beneficiaries,' rather than intended beneficiaries, and so 'may not enforce the contract absent a clear intent to the contrary.'" *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (quoting *Cnty. of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1243 (9th Cir.2009), *rev'd on other grounds by Astra USA, Inc. v. Santa Clara Cnty.,* 588 F.3d 1237 (2011)).  Given these high standards, Leung is unable to demonstrate that the Transfer Agreement was made with the intent to benefit her and her colleagues.

Accordingly, the Court GRANTS FDIC-R's motion to dismiss Count 6 WITHOUT LEAVE TO AMEND.

## IV.    MOTION TO STAY

Defendants' motion to stay discovery pending resolution of the motions to dismiss is denied as moot.  The case will proceed as to all remaining Defendants and a stay is unwarranted.

## V.    CONCLUSION

For the foregoing reasons:

14

1         • Longley's motion to dismiss is DENIED

2         • Becker's motion to dismiss is DENIED

3         • FDIC-R's motion to dismiss Counts 1 – 4 is DENIED.

4         • FDIC-R's motion to dismiss Counts 5 and 6 is GRANTED WITH PREJUDICE.

5       Defendants are directed to file an answer no later than 21 days from the date this order is

6 issued.

7       **IT IS SO ORDERED.**

8 Dated:  May 14, 2025

9

10                                           Noël Wise
United States District Judge

United States District Court
Northern District of California